## CARROLL ELECTRIC COOPERATIVE CORP. *v.* CITY OF BENTONVILLE, ARKANSAS

91-20                                   815 S.W.2d 944

Supreme Court of Arkansas
Opinion delivered September 30, 1991

*Vowell & Atchley, P.A.*, by: *Stevan E. Vowell*, for appellant.

*Kevin J. Pawlik*, for appellee.

TOM GLAZE, Justice. Statutory construction of Act 639 of 1989 (codified as Ark. Code Ann. §§ 14-207-101 to -106) is the

subject of this appeal. The City of Bentonville, appellee, annexed certain territory located near the city limits. Under authority of the Public Service Commission, appellant Carroll Electric Cooperative (Cooperative) provided the electricity for this territory. After annexation, the City put up poles and lines so it, too, could provide electricity to this newly annexed area. Three of the Cooperative's customers requested that their electrical service be disconnected, so that the City could now provide them with electricity. It is undisputed that the City did not acquire any of the Cooperative's poles, lines, facilities or other physical property, but the Cooperative argues that the City must still compensate it for the loss of its customers under Act 639.

This appeal is the consolidation of two cases involving the three customers who requested the Cooperative to disconnect their services. The Cooperative filed suit for temporary and permanent injunctions to prevent the City from providing electrical service to any of the Cooperative's member customers without first complying with Act 639 of 1989. The trial court granted a preliminary injunction in one of the cases, but it later granted the City's motion to dismiss both complaints finding that Act 639 does not apply unless the city takes physical property or facilities. On appeal, the Cooperative argues that the trial court erred in ruling that Act 639 does not provide compensation for the loss of its customers. We do not agree and therefore affirm.

Under section 3 of Act 639, Arkansas municipal corporations owning and operating electric utility systems have the right to acquire any or all properties and facilities of the electric public utilities serving within the newly annexed areas after giving a six-month written notice. Further, section 4 of the Act provides the procedures and valuation formulae governing the compensation of an electric public utility whose properties and facilities have been acquired by a municipality. Subsections (A), (B) and (C) of section 4 are pertinent here and provide as follows:

(A)  *After the six month notification by the municipality of its election to acquire public utility system properties and facilities the municipality shall pay to the electric public utility an amount equal to the following:*

(i)  The present-day reproduction cost new of the properties and facilities being acquired, less depreciation

computed on a straight-line basis, plus

(ii)    An amount equal to the cost of constructing any necessary facilities to reintegrate the system of the electric public utility outside the annexed area after detaching the portion to be sold.

(B)    *In the event that the electric public utility system does not provide wholesale power service to the municipality acquiring its properties and facilities, the municipality and the electric public utility shall,* for a period of six (6) months after the notification required by Section 3 of this act, consistent with laws, rules and regulations of appropriate regulatory authorities and existing power supply agreements *negotiate, in good faith, for power contracts which would provide for the purchase of power by the municipality from the electric public utility for an amount of power equivalent to the loss of any sales to customers of the electric public utility acquired by the municipality under this act.* In the event that the municipality ceases the receipt of wholesale power service from the electric public utility system consistent with the terms of the wholesale power supply agreement prior to five (5) years after the acquisition of electric public utility system properties and facilities under this act, then the municipality will pay, pro rata for the remainder of such five (5) year period in accordance with subsection (C)(ii) of this section.

(C)    *In the event that such an agreement pursuant to Section 4 (B) cannot be reached* within such six (6) month period, *then the municipality will pay the public utility for facilities in addition to amounts required by subsection A (i) and (ii)* of this section either:

(i)    Two hundred thirty percent (230%) of gross revenues less gross receipts taxes received by the public utility for the twelve (12) month period preceding notification from customers in the annexed area or;

(ii)    The amount required by subsection (C)(i) payable over five (5) years with interest at the then prevailing AAA insured tax exempt municipal bond interest rate.

(Emphasis added.)

In its argument, the Cooperative refers to the language "loss of any sales to customers" in subsection B above and contends that provision provides the Cooperative is entitled to compensation merely for the loss of its customers regardless of whether the City acquired the Cooperative's property and facilities. Such an interpretation takes the "loss of sales" language out of context and ignores the purpose and plain meaning of the section as a whole. Each subsection of section 4 providing compensation to an electric public utility is triggered when a municipality acquires a public utility's properties and facilities and the public utility no longer supplies electricity to that municipality. In the present case, the City acquired none of the Cooperative's properties or facilities, and although it has lost a few customers who chose to switch to the City's system, the Cooperative continues to provide electrical service to other customers in the annexed area.

The Cooperative also relies strongly on the case of *Woodruff Electric Coop. Corp.* v. *Ark. Public Service Comm.*, 234 Ark. 118, 351 S.W.2d 136 (1961). There, Forrest City annexed territory where Woodruff Electric Cooperative provided electricity. When Forrest City annexed the territory, Arkansas Power and Light, a lessee of the City, commenced furnishing electricity for the area, and as a result, the Woodruff Cooperative lost nine customers. The *Woodruff* court construed Act 85 of 1955 which was the controlling law at the time. That Act 85 in pertinent part provided as follows:

> If any rural area allocated by the Public Service Commission to a corporation organized under this Act shall be included in, or become a part of any incorporated city, town, or village already being served with electricity by a regulated public utility, then the members of said corporation residing or operating within such city, town or village shall lose their membership and right to receive service from said corporation. It shall be the duty of the Commission to enforce the provisions of this Act and to provide adequate compensation to the corporation for its loss of area and property. . .

Based on the provision quoted above, Woodruff Electric Cooperative was no longer able to provide electrical service to its

customers when Forrest City annexed the area. Thus, this court held that Forrest City under the Act, was required to compensate Woodruff for the loss of its nine customers.

The *Woodruff* case involved different law and different facts. The above-cited provision in Act 85 relied on in *Woodruff* has since been omitted when Act 85 was amended by Act 103 of 1957, now codified as Ark. Code Ann. § 23-18-331 (1987). Act 103 now provides that cooperatives can continue to provide service to the annexed areas and that the cooperative corporation continuing its electrical service into this newly annexed area must charge a comparable rate.

■■ In sum, under the current statutory provisions, when the City acquires the Cooperative's properties or facilities, it owes compensation to the Cooperative under section 4(A) of Act 639 of 1989. Further, in the event the Cooperative provides no electricity to the City acquiring its properties or facilities, then the City must compensate the Cooperative as described under subsection 4(B) of Act 639. When the City, however, does not acquire the Cooperative's properties or facilities, Act 639 does not apply. Instead, the Cooperative merely becomes an alternative supplier, and the City and the Cooperative can both provide electrical service to the area and compete for customers as provided under Act 103 of 1957.[1]

Because the City here acquired none of the Cooperative's facilities, it owes no compensation to the Cooperative. Instead, the Cooperative can compete with the City for customers.

■ Finally, we note that the Cooperative, in oral argument, cited several cases from other jurisdictions, but primarily relied on *Delmarva Power & Light* v. *Seaford*, 575 A.2d 1089 (Del. 1990), where an electric public utility filed a claim for inverse condemnation after the city annexed territory where the public utility provided services and its customers subsequently switched to the city utility. While there are many similarities between the facts before us and the ones in *Seaford*, we cannot agree the holding in *Seaford* is applicable or persuasive. The Cooperative

---

[1] The Act 103 of 1957 language pertinent here is still in effect, but the Act was amended for other purposes.

has presented no inverse condemnation claims in this case. Instead, both parties below and on appeal argued Arkansas statutory and case law, and the trial court made its ruling based on this law, as we have on appeal.

For the reasons stated above, we affirm the trial judge's construction of Act 639.